**Lionel R. BOLDUC and Maureen C. Bolduc, Plaintiffs, Appellees,**

v.

**BEAL BANK, SSB, Defendant, Appellant.**

**No. 98–1285.**

United States Court of Appeals,
First Circuit.

Heard Sept. 18, 1998.
Decided Jan. 22, 1999.

---

Jamie N. Hage with whom Eric Edward Nord and Peabody & Brown were on brief for appellant.

Michael C. McLaughlin with whom Law Offices of Michael C. McLaughlin was on brief for appellees.

Before BOUDIN, LYNCH and LIPEZ, Circuit Judges.

BOUDIN, Circuit Judge.

Beal Bank, SSB, a Texas institution, holds second mortgages on two New Hampshire properties owned by Lionel and Maureen Bolduc. Following the Bolducs' default, Beal Bank commenced foreclosure proceedings against the properties. At the Bolducs' be-

hest, the district court granted a preliminary injunction against Beal Bank barring foreclosure based on an alleged violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), and the equitable doctrine of mutual mistake. Beal Bank appeals.

The litigation arose out of two related transactions. The first occurred in 1987 when Lionel Bolduc obtained two loans from a now-defunct New Hampshire bank, BankEast, one for $360,000 and the other for $681,000. As collateral for the loans, Lionel Bolduc offered commercial properties including condominiums in Merrimack, New Hampshire, that he owned jointly with his wife, Maureen Bolduc. Lionel Bolduc was the sole applicant for the loans, and BankEast's commitment letter was addressed only to him.

At the closing, BankEast required Maureen Bolduc to co-sign the notes as well as the mortgages. The couple was not represented by counsel at the closing, and they were told by the bank that requiring her signature was standard procedure. Although the Bolducs were apparently business partners and had extensive real estate interests, BankEast's insistence that Maureen Bolduc co-sign the notes may have violated ECOA's bar on discrimination based on marital status. *See* 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 202.7(d)(1) (1998).

By 1991, the Bolducs were unable to meet the repayment schedule on the 1987 loans, and on April 17, 1991, they entered into the second transaction—a forbearance agreement with BankEast. The agreement maintained the 1987 notes and mortgages, partly forgave interest due and extended the payment deadline, added a small line of credit (never used) in favor of the Bolducs, and accepted the Bolducs' guarantee of a loan to a third party seeking to buy several of the Bolducs' condominiums. As security for these new extensions of credit and as additional security for the 1987 loans, the Bolducs granted BankEast blanket second mortgages on their home in Hudson, New Hampshire, owned solely by Maureen Bolduc, and on an undeveloped 90–acre parcel of land held by the couple jointly ("the Merrimack land").

BankEast failed in 1991, and the FDIC was appointed receiver, acquiring the Bolducs' notes and mortgages. Thereafter, the Bolducs defaulted on their payment obligation, and the FDIC foreclosed its first mortgages on the condominiums and related properties originally given as security in 1987. However, the FDIC did not foreclose on the second mortgages secured by the Hudson home and the Merrimack land even though the proceeds from the original collateral were not enough to satisfy the balance due on the 1987 notes, as amended in 1991.

In December 1995, the FDIC sold the notes and the second mortgages to the Loan Acceptance Corporation, a wholly owned subsidiary of Beal Bank. Beal Bank subsequently acquired the loans and second mortgages itself and soon thereafter sought to foreclose on the second mortgages. The mortgages contained a statutory "power of sale" provision permitting Beal Bank to begin foreclosure proceedings without court involvement. *See* N.H.Rev.Stat. Ann. § 477:29 (1997). The Bolducs then sued Beal Bank in federal district court to enjoin the foreclosure of the Hudson home and the Merrimack land; and the parties agreed to disposition by a magistrate judge under 28 U.S.C. § 636(c).

In February 1998, the magistrate judge granted a preliminary injunction, forbidding Beal Bank from foreclosing on either the Hudson house or the Merrimack land pending a trial on the merits; he enjoined the Bolducs *pendente lite* to maintain the properties and not to encumber them. A detailed opinion, issued on February 3, 1998, set forth the magistrate judge's reasoning. Beal Bank now appeals from that preliminary injunction, which we review under the customary standards. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15–16 (1st Cir.1996).

The district court had before it a substantial number of different claims urged by the Bolducs, but it rested the injunction on a limited set of rulings. It found that the Bolducs had a likelihood of prevailing at trial on their claim that Maureen Bolduc's signature on the 1987 notes had been secured in violation of ECOA. The court further found a

likelihood of the Bolducs' establishing that the 1991 agreement, which gave rise to the second mortgages, had been tainted by mutual mistake, *i.e.*, the parties' belief that a valid claim existed against Maureen Bolduc on the 1987 notes. Finally, the court found that an injunction was consistent with the equities and the public interest.

On this appeal, Beal Bank begins with certain threshold objections that it advanced below but that the district court rejected or bypassed. Beal Bank argues that the Bolducs failed to exhaust their administrative remedies under the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1821(d) ("FIRREA"); that their suit is barred by the ECOA statute of limitations; that it is barred by the *D'Oench, Duhme* doctrine and its statutory counterpart; and that the suit is premature because Beal Bank has not yet sought to collect directly against Lionel and Maureen on the promissory notes. We start with these objections.

The first objection is that the Bolducs' challenge to the second mortgages is barred because the Bolducs did not pursue it through administrative channels when the FDIC took over BankEast. Under FIRREA, the failure to seek such remedies precludes a court from entertaining "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets" of any bank for which the FDIC has been made receiver. 12 U.S.C. § 1821(d)(13)(D). Beal Bank, needless to say, asserts that the Bolducs are now trying to pursue an action seeking to nullify assets secured from the FDIC, namely, the second mortgages.

At the outset, the Bolducs might have argued, but did not, that the second mortgages, having been transferred to Beal Bank, no longer constitute assets of a bank for which the FDIC has been made receiver. Beal Bank might then have argued in response that a larger purpose of the exhaustion requirement is to clear title to the failed bank's remaining assets so that the latter can be mustered or sold. If so, perhaps the assets when transferred to a third party by the receiver should be free of any claims that should have been, but were not, asserted through the administrative process.

Our unaided search revealed no case law on this interesting question. Some precedent gives transferee banks who acquire from the receiver claims against third parties the benefit of the long statute of limitations that the FDIC itself would enjoy in pursuing such claims. *See, e.g., Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105–06 (5th Cir. 1996); *Bruin Holdings, Inc. v. Moderski*, 960 F.Supp. 62, 67 (M.D.Pa.1996). And some of the arguments made for this result might be applied by analogy in favor of Beal Bank. But since the Bolducs have not argued that the transfer to Beal Bank has any significance, we proceed on this issue as if the FDIC still held the second mortgages and the Bolducs were suing to enjoin their threatened foreclosure.

■ Even with this assumption, the issue is difficult. By its terms, the FIRREA exhaustion requirement applies to claims against the bank and not to claims by the bank against those indebted to it. As four circuit courts have held, such debtors are entitled to await an attempt by the receiver to collect and then assert any available defenses to collection in court; the debtors need not submit their defenses to the administrative process.[1] Although the Bolducs are the plaintiffs here, they say that their action to enjoin the foreclosure is merely an effort to assert the defense preemptively and not to recover money or property from the bank.

■ We agree that who happens to be the plaintiff is not controlling. The purpose of the exhaustion requirement is to make persons with claims against bank funds or property submit them promptly in a single administrative forum. One alleged merely to owe the bank money is not in this class, whether the debtor asks a court for a preemptive declaration or injunction against the bank claim or merely awaits suit by the bank and

---

1. *See Tri–State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir.1996); *RTC v. Love*, 36 F.3d 972, 976–77 (10th Cir.1994); *RTC v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 792–93 (9th Cir.1994); *National Union Fire Ins. Co. v. City Savings, F.S.B.*, 28 F.3d 376, 394 (3d Cir.1994).

672

then defends. *Cf. Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28 (3d Cir.1995), *qualified by Algrant v. Evergreen Valley Nurseries, L.P.*, 126 F.3d 178 (3d Cir.1997).

The difficulty is that the mortgages in this case have a double aspect. From one standpoint, they are potential claims by the bank to recover (out of specific property of the Bolducs) debts owed to the bank by the Bolducs; to this extent, the exhaustion requirement does not apply. But from another angle, a successful injunction suit by the Bolducs could be viewed as cutting off the bank's rights to *property* currently in the bank's possession, namely, a contingent property interest represented by the mortgages themselves.

■ In the end, we think that the Bolducs' suit does not quite fit within the statutory language that delineates the exhaustion requirement. It is not a claim by the Bolducs seeking any kind of "payment" from any bank, 12 U.S.C. § 1821(d)(13)(D); and as no one disputes that Beal Bank *owns* the mortgages—the fight is about the possible defenses to foreclosure—it is hard to describe the Bolducs' action as one seeking "a determination of rights with respect to" a bank asset, *id.* We therefore conclude that FIRREA poses no bar to the Bolducs' argument on the merits.

This brings us to Beal Bank's second threshold objection: the Bolducs are asserting rights under ECOA long after the two-year statute of limitations has run on bringing suits under that act. *See* 15 U.S.C. § 1691e(f). The magistrate judge agreed that the ECOA violation occurred, if at all, in 1987 when Maureen Bolduc signed notes for the original loan. But he relied on cases holding that a wife, made to co-sign for or guarantee a loan to her husband in violation

of ECOA, may defend on that ground when a collection suit on the loan is brought against her, even if the suit comes more than two years after the signing.[2]

■ These cases have relied primarily on the common law doctrine of recoupment, which allows a defendant to "defend" against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction. *See* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1401 (2d ed.1990). Recoupment is allowed even where the defendant's claim would be barred, if asserted in a separate action, by the statute of limitations.[3] This approach also protects the ill-informed spouse where the bank happens or chooses to wait more than two years before suing on the note.

■ We agree that recoupment doctrine could allow Maureen Bolduc to assert an ECOA defense against BankEast if it sued her to collect on the 1987 notes and that the defense might be asserted preemptively by Maureen Bolduc in certain circumstances. But the present suit is not a challenge to the 1987 notes but rather to mortgages issued in a second transaction that occurred in 1991 and as to which no ECOA violation has been shown. Whether recoupment doctrine extends to this latter case is open to serious dispute since the ECOA violation was committed by someone not a party to this case in the course of an earlier transaction.[4]

We need not resolve this interesting question. Given the magistrate judge's own ground for relief—mutual mistake—the action can be viewed as one arising under state law to enjoin foreclosure of a state-law mortgage because of a contractual defect recognized under state law. There is complete diversity between the parties. Even if an independent federal action under ECOA

**2.** *See, e.g., Sony Elecs., Inc. v. Putnam*, 906 F.Supp. 228, 229 (D.N.J.1995); *Integra Bank/Pittsburgh v. Freeman*, 839 F.Supp. 326, 329 (E.D.Pa.1993); *Mundaca Inv. Corp. v. Emery*, 674 A.2d 923, 925 (Me.1996).

**3.** *See Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Kosadnar v. Metropolitan Life Ins.*, 157 F.3d 1011, 1015 (5th Cir.1998).

**4.** Classically, recoupment is permitted only to reduce or eliminate damages, not to gain some other form of relief, *see* 6 Wright, Miller & Kane, *supra*, § 1401, at 10; and both the primary damage claim and the claim in recoupment must arise out of the same transaction and involve the same litigants. *See id.*

were barred as to the 1991 transaction, this would not preclude the possibility of mutual mistake based on the unenforceability of the 1987 notes against Maureen Bolduc.

■ This brings us to Beal Bank's remaining threshold objections. Contrary to the bank's argument, the assertion of mutual mistake does not involve reliance by the Bolducs on any secret agreement between the lender and borrower barred by the *D'Oench, Duhme* doctrine or the statutory embodiment of the doctrine. *See* 12 U.S.C. §§ 1823(e), 1821(d)(9)(A); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The doctrine and statute are only directed at protecting the FDIC from unrecorded or oral agreements not in the insured bank's records; they do not preclude every possible defense to a bank claim—*e.g.*, that the loan was to an underage borrower who lacked capacity to contract— merely because it may depend on information that is not contained in bank files.[5]

■ Further, we do not agree with the bank that the Bolducs' action was "premature." Beal Bank does not deny that it was seeking to foreclose and that it could commence such a foreclosure without prior court proceedings under the so-called "power of sale" provisions contained in the mortgages. Nor (as Beal Bank suggests) is this independent action a premature assertion of an affirmative defense under Fed.R.Civ.P. 8; the use of the term in the rule is concerned with pleading sequence within a case and has nothing to do with whether an affirmative defense can sometimes be asserted in a preemptive action for declaratory or injunctive relief.

■ At last we come to the central question whether a "likelihood-of-success" showing adequately supported the preliminary injunction. *See Ross–Simons*, 102 F.3d at 15. The district court found such a likelihood based on a single theory: that a 1987 violation of ECOA gave rise to a mutual mistake in the 1991 agreement from which the mort-

gages now at issue sprang. We confine ourselves to the theory relied on by the district court, no other being pressed on this appeal as an alternative ground for the preliminary injunction.

The first step in the district court's reasoning—that there likely was an ECOA violation in 1987—is supportable so far as necessary for a preliminary injunction. If Lionel Bolduc sought the loans himself and was creditworthy, it was arguably a violation to insist that his wife also sign the notes. *See* 15 U.S.C. § 1691 *et seq.;* 12 C.F.R. § 202.7(d). She could have been required to sign off on mortgaging the property, since it was tendered by Lionel Bolduc as security and was jointly held with his wife, but Beal Bank has not shown that state law required Maureen to co-sign the notes to make the security effective.

However, Beal Bank is not proposing to collect personally against Maureen Bolduc on the 1987 notes but to collect on second mortgages given in 1991 to secure all of the Bolducs' debts, new and old. As already noted, the magistrate judge bridged this gap by concluding that the 1991 agreement was subject to avoidance on grounds of mutual mistake. The magistrate judge posited that had Maureen Bolduc known that she was not liable on the 1987 notes, she "would not have committed her home or her share in the Merrimack property"; Lionel "may not have risked his share" in the latter; and, "in short, the mistake induced the Bolducs to enter an agreement that they would otherwise have refused."

These findings are unsupported by evidence and, on the record before us, highly doubtful. The 1991 forbearance agreement is on its face a standard workout arrangement between bank and debtor. It extended overdue loans, forgave or postponed interest, and granted new credit—all as described above—in exchange for new second mortgages. Maureen Bolduc, as well as her husband, had good reason to favor the transaction regardless of her possible personal liability

---

5. *See RTC v. Carr*, 13 F.3d 425, 429 (1st Cir.1993) ("Neither the *D'Oench* doctrine nor § 1823(e) bars the assertion of a claim or defense that does not depend on an agreement...."); *Texas Re-*

*frigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 981 (5th Cir.1992); *FDIC v. O'Flahaven*, 857 F.Supp. 154, 158 (D.N.H.1994).

on the 1987 notes (which were already at least partly secured). Apart from a practical interest in her husband's prosperity, she was a co-owner of mortgaged property—comprising collateral for the 1987 notes—that would be forfeit absent a workout.

Under these circumstances, it is far from obvious that Maureen Bolduc signed the agreement and second mortgages "because" of a mistaken belief that she would be secondarily liable on the 1987 notes—a liability that itself was limited by the likelihood that the BankEast would recover considerable value from the 1987 mortgaged property. It is even less probable that her husband's consent to the second mortgage on the Merrimack property, a consent required as a condition of a promising workout of his own obligations, depended on the mistaken belief that his wife might otherwise have to pay part of his own 1987 debt.

So far as we can tell from the record, the Bolducs offered no evidence to support either of the magistrate judge's conjectures in their favor. The Bolducs do not even appear to have argued mutual mistake in the district court, contending instead (quite wrongly) that the existence of a legal defense for Maureen Bolduc to the 1987 notes created a "failure of consideration" for the 1991 transaction. The magistrate judge was entitled to consider mutual mistake on his own motion, but the lack of evidence is easily understood and the need for supported findings remains. Absent more information or further explanation, the causation issue is not yet one on which the Bolducs have been shown likely to prevail.

■ We have one other concern about the mutual mistake doctrine. The magistrate judge supposed—subject to one qualification—that mutual mistake rendered the 1991 agreement and the second mortgages "void." That is not the law. In New Hampshire, see *Hillside Assoc. of Hollis, Inc. v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 605 A.2d 1026, 1029–30 (N.H.1992), as elsewhere, see E. Farnsworth, *Contracts* § 9.3,

at 685 (2d ed.1990), a party may be permitted to avoid a contract based on mutual mistake but only if avoidance is just and reasonable—a judgment guided, if not in all cases controlled, by certain preconditions and precedent, *see id.*

■ In general, avoidance based on mutual mistake must not unfairly prejudice the rights of an innocent third party,[6] and Beal Bank is a third party to the 1991 agreement, having acquired BankEast's rights and the second mortgages from the FDIC. Whether it is innocent is a difficult question. Addressing another issue, the magistrate judge found that Beal Bank should have known of the claimed ECOA violation when it acquired the mortgages from the FDIC; a reader of the FDIC file would have uncovered a letter from the Bolducs alerting the FDIC to their ECOA claims. Yet Beal Bank does not directly address the issue and we pass it by.

■ What Beal Bank does argue is that the lender side of the contract has already been performed by the deferral of existing claims under the 1987 contract, by forgiving in part past interest due under that agreement, and by extending new credit used to facilitate sales of Bolduc property to third parties. If partial performance has occurred on one side, mutual mistake doctrine does not mechanically cancel all remaining obligations on the other side and thereby allow the nonperforming party simply to retain the benefit conferred by the partial performance. *See Restatement (Second) of Contracts* § 158, cmt. b; § 384 (1981). On the contrary, the doctrine permits the court to grant relief only on such terms "as justice requires." *Id.* § 158, at 419.

We need not resolve this concern because we conclude that the injunction is flawed, as explained above, by inadequate support for the finding that the putative mutual mistake "caused" the 1991 agreement and second mortgages. If on remand the district court does find that this causal connection has been proved to a sufficient likelihood to support a

---

6. *See Restatement (Second) of Contracts* § 155 cmt. f; § 381 (1981); 3 A. Corbin, *Contracts* § 606, at 654 (1960); *see also Fidelity Bank v. Lutheran Mut. Life Ins. Co.*, 465 F.2d 211, 214 (10th Cir.1972); *cf. Great Atlantic Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 980–81, (8th Cir.1985).

preliminary injunction—and the finding would require evidence and not just assertion—the magistrate judge can also consider the extent to which enjoining the mortgage foreclosures would be compatible with justice in light of partial performance of the 1991 agreement and whether the other conditions for a preliminary injunction (equity, public interest) are satisfied.

This case gives every promise of producing more trial work, and probably further appeals, relating to the effort to enjoin the mortgages on ECOA grounds, not to speak of other theories and other relief sought by the Bolducs. The parties might therefore wish to consider whether there is any prospect of settling the case without further litigation. Absent a settlement, the present preliminary injunction may be continued in force for 60 days after the mandate issues but thereafter must be vacated unless, by then, new findings sufficient to support it have been made and a new order entered by the magistrate judge. *See TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 546 (1st Cir.1996).

The case is *remanded* for further proceedings consistent with this opinion. Each side shall bear its own costs on this appeal.