**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD RUNDGREN; MICHELE C. RUNDGREN, individually and as Trustees respectively of the Todd Rundgren Revocable Trust, dated November 1, 2005 and the Michele C. Rundgren Revocable Trust, dated October 6, 2005, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> WASHINGTON MUTUAL BANK, FA, a Federal Savings Bank; JPMORGAN CHASE BANK NA, a Delaware corporation; DOES, 1-30, <br> *Defendants-Appellees*. | No. 12-15368 <br><br> D.C. No. 1:09-cv-00495-JMS-KSC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
June 10, 2014—Honolulu, Hawaii

Filed July 29, 2014

Before: William A. Fletcher, Sandra S. Ikuta, and Andrew
D. Hurwitz, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### FIRREA

The panel affirmed the district court's dismissal of Todd and Michele Rundgren's claims against JPMorgan Chase Bank, in a case arising out of allegedly fraudulent acts by Washington Mutual Bank, which was placed into the receivership of the Federal Deposit Insurance Company.

The FDIC transferred certain WaMu assets, including the Rundgrens' mortgage, to Chase. The panel held that because WaMu was placed into the receivership of the FDIC and the Rundgrens failed to exhaust the administrative remedies provided by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as required by 12 U.S.C. § 1821(d)(13)(D), the district court correctly determined it lacked jurisdiction to hear the Rundgrens' claims. The panel concluded that the claims in the Rundgrens' complaint are "claims" for purposes of § 1821(d)(3)(D) and that their claims "relate to any act or omission" of WaMu.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Gary Victor Dubin (argued) and Frederick John Arensmeyer, Dubin Law Offices, Honolulu, Hawaii, for Plaintiffs-Appellants.

Paul D. Alston (argued) and Tina L. Colman, Alston Hunt Floyd & Ing, Honolulu, Hawaii; Jeffrey H. K. Sia, Diane W. Wong, and David A. Gruebner, Ayabe, Chong, Nishimoto, Sia & Nakamura, Honolulu, Hawaii for Defendant-Appellee JPMorgan Chase Bank.

**OPINION**

IKUTA, Circuit Judge:

This appeal requires us to consider whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, stripped the district court of jurisdiction over Todd and Michele Rundgren's claims arising out of allegedly fraudulent acts by Washington Mutual Bank (WaMu). Because WaMu was placed into the receivership of the Federal Deposit Insurance Corporation (FDIC), and the Rundgrens failed to exhaust the administrative remedies provided by FIRREA, the district court correctly determined it lacked authority to hear the Rundgrens' claims. *See* 12 U.S.C. § 1821(d)(13)(D).

I

In considering this facial challenge to the district court's subject matter jurisdiction, we assume the veracity of the Rundgrens' allegations. *See Savage v. Glendale Union High*

*Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In early 2005, the Rundgrens obtained a loan secured by a mortgage in favor of Countrywide Home Loans, Inc, on their property in Kilauea, Hawaii. Three years later, the Rundgrens refinanced their mortgage with WaMu for around $3,000,000. According to the Rundgrens, the loan refinancing was tainted by WaMu's numerous fraudulent acts. For example, the Rundgrens allege that WaMu falsified the loan application, highly exaggerated the Rundgrens' income and assets without their knowledge, misled the Rundgrens as to the terms of the note, secured a false appraisal, and rushed them through the signing process, among other things.

WaMu was later seized by the Office of Thrift Supervision and placed into the receivership of the FDIC. The FDIC then transferred certain WaMu assets, including the Rundgrens' mortgage, to defendant JPMorgan Chase Bank, N.A. (Chase) under a Purchase and Assumption Agreement. Pursuant to this agreement, the FDIC retained most liabilities associated with those assets.[1]

---

[1] The Purchase and Assumption Agreement between Chase and the FDIC provided that:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extrajudicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by [WaMu] prior to failure, or to any loan made by a third party in connection with

After Chase determined that the Rundgrens were in default on their loan, Chase accelerated the payments secured by the mortgage and notified the Rundgrens that a non-judicial foreclosure sale would occur on August 26, 2009. In response, the Rundgrens sent Chase a letter stating that "they each hereby timely exercise their right to cancel said referenced loan transaction and mortgage and promissory note" based on allegations that Chase and WaMu violated state and federal law.

The Rundgrens then sued Chase and WaMu in Hawaii state court. In their complaint, the Rundgrens alleged that WaMu defrauded them and breached its fiduciary duty during the refinancing negotiation. The Rundgrens sought, among other things: a declaratory judgment that the loan transaction was void and unenforceable and that Chase could not proceed with its nonjudicial foreclosure action; rescission of the loan and treble damages under state law; injunctive relief preventing Chase from attempting to foreclose on the property or "further damage their finances"; statutory damages under the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667f, and other state and federal consumer protection acts; and punitive damages.

Chase then removed the action to federal court. The district court dismissed the case against Chase for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Rundgrens had failed to exhaust their claims with the FDIC prior to bringing suit, as required by

a loan which is or was held by [WaMu], or otherwise arising in connection with [WaMu]'s lending or loan purchase activities are specifically not assumed by [Chase].

12 U.S.C. § 1821(d)(13)(D).  In the alternative, the court held that the Rundgrens failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  This appeal followed.

II

We review de novo the district court's dismissal of a claim for lack of subject matter jurisdiction.  *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 820 (9th Cir. 2005).  In determining whether the Rundgrens' action against Chase is barred by the jurisdiction-stripping provisions of FIRREA, we first consider the Act's purpose and structure.

Congress enacted FIRREA "in an effort to prevent the collapse of the [savings and loan] industry" in the late 1980s.  *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1211 (9th Cir. 2011).  In order "to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions," FIRREA granted "the FDIC, as receiver, broad powers to determine claims asserted against failed banks."  *Henderson v. Bank of New Eng.*, 986 F.2d 319, 320 (9th Cir. 1993).

To maximize the FDIC's ability to fulfill its role as claim adjudicator, FIRREA "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate."  *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012).  The comprehensive claims process, *see* 12 U.S.C. § 1821(d)(3)–(10), allows the FDIC to "ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks," *Benson*, 673 F.3d at 1211 (internal quotation marks omitted), "'without unduly burdening the District Courts,'"

*Henderson*, 986 F.2d at 320 (quoting H.R. Rep. No. 101-54(I), at 419 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 215).  As set forth in FIRREA, once the FDIC is appointed receiver for a failed depository institution, it must publish a notice to all of "the depository institution's creditors" with instructions "to present their claims, together with proof, to the receiver" by a specific date.    12 U.S.C. § 1821(d)(3)(B)(i).  The FDIC must also mail the notice "to any creditor shown on the institution's books," *id.* § 1821(d)(3)(C)(i), and "upon discovery of the name and address of a claimant not appearing on the institution's books," the FDIC must mail the notice to the claimant "within 30 days after the discovery of such name and address," *id.* § 1821(d)(3)(C)(ii).    Late claims "shall be disallowed and such disallowance shall be final," *id.* § 1821(d)(5)(C)(i), unless "the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the designated] date," and "such claim is filed in time to permit payment of such claim," *id.* § 1821(d)(5)(C)(ii). Within 180 days (or another agreed-upon period of time) after receiving the claim, the FDIC "shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim."    *Id.* § 1821(d)(5)(A); *see also id.* § 1821(d)(5)(D).  If the claimant timely submits the claim to the FDIC and the FDIC disallows the claim, "the claimant may request administrative review of the claim . . . or file suit on such claim" in the district court whose jurisdiction covers the depository institution.    *Id.* § 1821(d)(6)(A).

FIRREA strips courts of jurisdiction over claims that have not been exhausted through this process:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

*Id.* § 1821(d)(13)(D).

## III

In light of the exhaustion requirement set forth in § 1821(d)(13)(D), we begin by asking whether the Rundgrens' complaint alleges a "claim" and if so, whether the claim relates to "any act or omission," *id.* § 1821(d)(13)(D)(ii), of an "institution for which the [FDIC] has been appointed receiver," *id.* § 1821(d)(13)(D)(i).

## A

FIRREA does not define the term "claim" for purposes of exhaustion, so we use the ordinary meaning of the term. *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1061 (9th Cir. 2003) (en banc), *as amended by* 360 F.3d 1374 (9th Cir. 2004) (en banc). A "claim" is a cause of action or the aggregate of facts that gives rise to a

right to payment or an equitable remedy.  *See* Black's Law Dictionary 281–82 (9th ed. 2009); *see also* Black's Law Dictionary 247 (6th ed. 1991).  Given this general meaning of the word claim in normal legal usage, the Rundgrens' complaint clearly raises "claims" against WaMu and Chase for monetary and nonmonetary relief.

The Rundgrens raise two arguments against this straightforward conclusion.  First, the Rundgrens argue that their claims are not the sort of claims contemplated by § 1821(d)(13)(D) because the Rundgrens are not WaMu's creditors.  We have previously rejected this argument as inconsistent with the statutory language.  *See McCarthy v. FDIC*, 348 F.3d 1075, 1080 (9th Cir. 2003) (holding that "the exhaustion rule . . . is not limited to creditors, but applies as well to debtors"). Section 1821(d)(13)(D) is drafted broadly to preclude courts from exercising jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to" the assets of a failed bank in the hands of the FDIC, or "any claim relating to any act or omission" of a failed bank, without respect to the identity of the claimant.  Nothing in this section suggests that "any claim" refers only to those asserted by creditors.  Although FIRREA refers to the FDIC's duty to provide notice to "the depository institution's creditors," 12 U.S.C. § 1821(d)(3)(B)(i), the statute also provides for notice to other "claimant[s]," *id.* § 1821(d)(3)(C)(ii) (requiring the FDIC to mail notice to any "claimant not appearing on the institution's books" that is later discovered). More important, although Congress specifically referred to "creditors" at various points in FIRREA, it did not do so in § 1821(d)(13)(D), further indicating its intent to preclude federal courts from exercising jurisdiction over non-exhausted claims by any claimant.  Our sister circuits agree.

*See McCarthy*, 348 F.3d at 1079–80 (collecting cases and noting that our sister circuits "have uniformly held that debtors' actions are subject to FIRREA exhaustion").

Nor can we conclude that the Rundgrens' claims are not "claims" because the FDIC would lack the authority to adjudicate them.  We have held that FIRREA "bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure.'"  *Henderson*, 986 F.2d at 321 (quoting *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 394 (3d Cir. 1991)); *see also Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 714 (8th Cir. 1996) (holding that § 1821(d)(13)(D) applies to declaratory judgment actions); *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 385 (3d Cir. 1994) (same). And the Rundgrens "give us no reason to believe that FIRREA exhaustion would have been futile," *Benson*, 673 F.3d at 1213, or that their claims are otherwise not susceptible of resolution through FIRREA's administrative procedure, *see McCarthy*, 348 F.3d at 1081 (holding that "apart from claims made in connection with bankruptcy proceedings or arising out of a breach of contract fully performed by the aggrieved party but not repudiated by the receiver, all claims or actions [against a failed bank] must be submitted for administrative resolution").

The Rundgrens also assert that because they are attempting to prevent a nonjudicial foreclosure, their complaint should be construed as raising affirmative defenses, as "§ 1821(d)(13)(D) does not divest a district court of jurisdiction over an affirmative defense." *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 793 (9th Cir. 1994).

We disagree.  At the time of this suit, Hawaii, like many states in this circuit, had both judicial and nonjudicial foreclosure regimes.  Hawaii law authorized lenders like Chase to bring an action in Hawaii state court to foreclose on the property in the event of a default.  *See* Haw. Rev. Stat. § 667-1.5.  Borrowers like the Rundgrens could then raise defenses to the judicial foreclosure proceeding. *See id.* § 667-4.  But Hawaii law also permitted a borrower and lender to agree that the lender could exercise a power of sale should the borrower default.  Haw. Rev. Stat. §§ 667-5(a), 667-5.7 (2008 ed.); *Lee v. HSBC Bank USA*, 121 Hawai'i 287, 291 (2009).[2] When the parties have agreed to use these nonjudicial foreclosure proceedings and the borrower defaults, the lender is contractually and statutorily authorized to commence a public sale of the property without the need to resort to the judicial process.  *See* Haw. Rev. Stat. § 667-5 (2008 ed.).  A nonjudicial foreclosure is intended to be "'relatively quick and inexpensive.  It does not require a lengthy time period between the notice of default and foreclosure sale, and does not require court costs and legal fees associated with discovery and drafting of pleadings.'"  *Lee*, 121 Hawai'i at 292 (quoting Georgina W. Kwan, *Mortgagor Protection Laws:  A Proposal for Mortgage Foreclosure Reform in Hawai'i*, 24 U. Haw. L. Rev. 245, 253 (2001)).  In order to halt a nonjudicial foreclosure, the borrower may "impeach[] by action or otherwise, any foreclosure proceeding" by bringing action "prior to the entry of a new certificate of title."  Haw. Rev. Stat. § 501-118; *see also Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 101 (2005).  In other words, if the loan documents give the lender the power to proceed by

---

[2] The Hawaii State Legislature has significantly altered the nonjudicial foreclosure process since Chase's 2009 foreclosure attempt.  *See* 2012 Haw. Sess. Laws, Act 182.

means of nonjudicial foreclosure, a borrower who wants to stop the process may bring an independent action raising claims that provide a legal basis for enjoining the lender from exercising its rights under the contract.

Here, the Rundgrens had contractually agreed to allow the lender to exercise a power of sale and foreclosure without judicial proceedings. Because the lender had no need to pursue foreclosure through a court action, the Rundgrens could not block a foreclosure by raising affirmative defenses; rather, they exercised their right under Hawaii state law to bring a lawsuit raising their claims against WaMu and Chase. Nothing in FIRREA allows us to ignore common legal usage and recharacterize the Rundgrens' lawsuit for legal and equitable relief and damages as one raising affirmative defenses.

Our decision in *Midwest Federal* is not to the contrary. In that case, the Resolution Trust Corporation (RTC), acting as receiver for a failed bank, brought a legal action against a borrower (and various guarantors) to foreclose on the mortgage. *Midwest Fed.*, 36 F.3d at 789. Because the loan documents did not state the loan was nonrecourse, the RTC also sued for a deficiency amount. The defendants filed an answer and a counterclaim, alleging mutual mistake and seeking reformation of the terms of the loan agreement to include a nonrecourse provision. *Id.* at 789–90. Consistent with FIRREA's broad reference to "claims," we noted that the mere "fact that the pleading was labeled a counterclaim does not avoid the jurisdictional limitations imposed by FIRREA." *Id.* at 791. Nevertheless, we thought that "a better description of the reformation claim is 'affirmative defense,'" *id.* at 791, because the defendant filed the pleading to avert personal liability in the RTC's action against it, and because

Federal Rule of Civil Procedure 8(c) authorizes federal courts to "treat the pleading as an affirmative defense rather than a counterclaim," *id.* at 792, when  "justice requires," Fed. R. Civ. P. 8(c)(2).  Accordingly, we concluded that "a district court has subject matter jurisdiction over affirmative defenses raised by a defendant who, prior to being sued by the RTC, was not a creditor of the RTC and who had no independent basis for filing a claim against the RTC, even though the defendant had not exhausted the administrative procedures established by FIRREA."  *Midwest Fed.*, 36 F.3d at 793.

Here, by contrast, the Rundgrens are not defendants in any lawsuit by the RTC, FDIC, or a lender.  They are the plaintiffs bringing an independent action against the lender, raising common law and statutory claims based on WaMu's alleged fraud.  The Rundgrens' argument that such an action should be construed as an affirmative defense finds no support in FIRREA.  Nor do the Rundgrens cite any authority equivalent to Rule 8 of the Federal Rules of Civil Procedure that would allow us to recharacterize the claims in the Rundgrens' independent lawsuit as affirmative defenses. Accordingly, we are bound by the plain language of the statute, which strips us of jurisdiction over "any claim relating to any act or omission" of a failed bank.  12 U.S.C. § 1821(d)(13)(D)(ii).

The Rundgrens also rely on *Bolduc v. Beal Bank, SSB*, 167 F.3d 667 (1st Cir. 1999), to support their argument that we must construe their legal action as an affirmative defense for purposes of FIRREA.  In *Bolduc*, the First Circuit

examined whether a lawsuit by borrowers against the FDIC[3] to stop a nonjudicial foreclosure was barred by § 1821(d)(13)(D). 167 F.3d at 669–70, 672. *Bolduc* reasoned that under FIRREA, it did not matter "who happens to be the plaintiff" because "[t]he purpose of the exhaustion requirement is to make persons with claims against bank funds or property submit them promptly in a single administrative forum." *Id.* at 671. According to *Bolduc*, "[o]ne alleged merely to owe the bank money" is not bringing such a claim, "whether the debtor asks a court for a preemptive declaration or injunction against the bank claim or merely awaits suit by the bank and then defends." *Id.* at 671–72. Nevertheless, *Bolduc* expressed uncertainty as to whether a borrower attempting to stop a foreclosure was equivalent to a person who merely owed the bank money. The court noted that mortgages "have a double aspect": if the borrower's lawsuit is deemed a response to potential claims of the bank to recover debts owed to the bank by the borrowers, then "the exhaustion requirement does not apply," but if the borrower's lawsuit is viewed "as cutting off the bank's rights to *property* currently in the bank's possession, namely, a contingent property interest represented by the mortgages themselves," then the exhaustion requirement might apply. *Id.* at 672. In the end, the court did not resolve this "double aspect" problem, but concluded that the borrower's suit in that case "does not quite fit within the statutory language that delineates the exhaustion requirement" primarily because "it is hard to describe the

---

[3] Although the lawsuit was actually brought against the bank which had acquired the failed bank's assets from the FDIC, the First Circuit proceeded "as if the FDIC still held the second mortgages" and the borrowers "were suing to enjoin their threatened foreclosure." *Bolduc*, 167 F.3d at 671.

[borrowers'] action as one seeking 'a determination of rights with respect to' a bank asset." *Id.*; *cf.* 12 U.S.C. § 1821(d)(13)(D)(i) (stripping a court of jurisdiction over "any action seeking a determination of rights with respect to, the assets of any depository institution" in the hands of the FDIC). *Bolduc* did not address the language of § 1821(d)(13)(D)(ii), which refers to a "claim relating to any act or omission" of the failed bank.

In our view, the reasoning of *Bolduc* is neither clear nor persuasive. *Bolduc* itself acknowledges that a lawsuit to enjoin a nonjudicial foreclosure can be characterized as a claim against the lender, in that the borrower is asserting a cause of action intended to deprive the lender of a valuable right, namely, a secured interest in property. In our view, a claim aimed at preventing a lender from obtaining repayment of a loan or any realization on its security interest is clearly a claim against the lender that seeks "a determination of rights with respect to a bank asset" for purposes of § 1821(d)(13)(D)(i). Moreover, a borrower's claim that the bank is not entitled to foreclose due to past misdeeds plainly satisfies the criterion of being a "claim relating to any act or omission" of a bank. *Id.* § 1821(d)(13)(D)(ii). To the extent *Bolduc* held otherwise, we disagree. Therefore, *Bolduc* does not change our analysis here, and we conclude that the Rundgrens' claims are not affirmative defenses exempt from FIRREA's exhaustion requirement.

## B

Having concluded that the Rundgrens' claims in their complaint are "claims" for purposes of § 1821(d)(3)(D), we now consider whether they relate to "any act or omission" of WaMu or the FDIC as receiver. *Id.* § 1821(d)(13)(D)(ii).

Although the Rundgrens named Chase as well as WaMu in their complaint, all claims in the complaint rest on the theory that WaMu took deceptive and fraudulent actions to induce them to enter into a loan agreement, and their mortgage and note are therefore unenforceable.  The complaint makes no independent claims against Chase.[4]   A claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the failed institution. "Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process."    *Benson*, 673 F.3d at 1214 (internal quotation marks omitted).  Accordingly, we conclude that the Rundgrens' claims relate to WaMu's acts or omissions for purposes of § 1821(d)(13)(D).

IV

The Rundgrens' complaint alleges claims "relating to any act or omission" of WaMu, 12 U.S.C. § 1821(d)(13)(D)(ii), and they have not explained why their claims are not susceptible of resolution through the administrative process, *see McCarthy*, 348 F.3d at 1081 (noting the "special situations" that constitute an "exception[]" to the rule that "all claims or actions must be submitted for administrative resolution").  Because the Rundgrens have not exhausted their administrative remedies under § 1821(d), the plain

---

[4] The Rundgrens argue that Chase violated TILA by failing to respond to the Rundgrens' rescission notice.  The Rundgrens' complaint did not include such a claim, nor would such a claim have been ripe, given that the Rundgrens filed their complaint on the same day they provided Chase a notice of rescission, and no TILA violation can arise until 20 days after the lender receives such a notice.  *See* 15 U.S.C. § 1635(b).

language of § 1821(d)(13)(D)(ii) stripped the district court of jurisdiction to consider the Rundgrens' complaint.

**AFFIRMED.**