**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORMAN SHAW, *Plaintiff-Appellant*, <br><br> v. <br><br> BANK OF AMERICA CORPORATION; U.S. BANK, *Defendants-Appellees*. | No. 17-56706 <br><br> D.C. No. 3:12-cv-01207-DMS-BLM <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted October 24, 2019
Pasadena, California

Filed December 27, 2019

Before: Andrew J. Kleinfeld, Consuelo M. Callahan,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY*

## Truth in Lending Act

The panel affirmed the district court's dismissal of a Truth in Lending Act claim for lack of subject matter jurisdiction based on the jurisdiction-stripping provisions of the Financial Institutions Reform, Recovery, and Enforcement Act.

Plaintiff sought rescission of a mortgage loan on the ground that the lender violated TILA by providing him with defective notice of the right to cancel when the loan was signed. The panel held that FIRREA's administrative exhaustion requirement applied because there was (1) a "claim" that (2) related to "any act or omission" of (3) an institution for which the Federal Deposit Insurance Corp. had been appointed receiver. First, the panel held that plaintiff had a "claim" because his cause of action gave right to the equitable remedy of rescission and was susceptible of resolution via FIRREA's claims process. Agreeing with the Fourth Circuit, the panel concluded that there was no requirement that the loan have passed through an FDIC receivership. Second, the panel held that plaintiff's claim related to an act or omission, that is, the lender's alleged failure to comply with TILA's disclosure requirements. Finally, the third element was met because the lender had failed and the FDIC had been appointed as receiver. The panel further held that FIRREA's statutory exhaustion

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

requirement does not contain a futility exception, allowing a claim to proceed when filing with the FDIC would be futile.

The panel held that plaintiff did not exhaust his remedies with the FDIC before filing suit, and his later communications with the FDIC did not prevent dismissal of his TILA claim for lack of subject matter jurisdiction. In addition, the district court did not abuse its discretion in denying plaintiff's request for further discovery.

## COUNSEL

Norman Shaw (argued), Solana Beach, California, pro se; Chris Ford, Ford Law AZ, Phoenix, Arizona; for Plaintiff-Appellant.

Alan E. Schoenfeld (argued), Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Albinas J. Prizgintas and Arpit K. Garg, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Bryant S. Delgadillo and Mariel Gerlt-Ferraro, Parker Ibrahim & Berg LLP, Costa Mesa, California; for Defendants-Appellees.

## OPINION

R. NELSON, Circuit Judge:

Plaintiff Norman Shaw appeals from the district court's dismissal of his Truth in Lending Act ("TILA") claim for lack of subject matter jurisdiction based on the jurisdiction-stripping provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Because we agree that the district court lacked subject matter jurisdiction, we affirm the district court's dismissal.

## I

Plaintiff Norman Shaw owns a home in Solana Beach, California. In 2006, he refinanced his home loan, borrowing $1.26 million from Washington Mutual Bank ("WaMu"). One month later, LaSalle Bank, N.A. allegedly became the trustee of his loan, although WaMu continued to service it. WaMu was later closed and placed into the receivership of the Federal Deposit Insurance Corporation ("FDIC"). At that time, JPMorgan Chase Bank acquired WaMu's assets via a Purchase and Assumption Agreement with the FDIC.

In 2009, Mr. Shaw defaulted on his home loan and a foreclosure date was set. A month before foreclosure, Mr. Shaw sent notices of loan rescission to WaMu, JP Morgan Chase, and Bank of America pursuant to instructions in his loan documents. Mr. Shaw sought rescission, claiming that WaMu violated TILA by providing him with defective notice of the right to cancel when the loan was signed. None of the institutions contacted by Mr. Shaw rescinded the loan.

Being "short on options to save [his] home," Mr. Shaw declared bankruptcy, which halted foreclosure proceedings. He then filed a TILA lawsuit as an adversary proceeding in

bankruptcy court.  By that point, the trustee of the loan was U.S. Bank, a successor in interest to Bank of America.  U.S. Bank moved to dismiss Mr. Shaw's adversarial action for lack of jurisdiction.  The bankruptcy court agreed.

Mr. Shaw then brought this action in May 2012, seeking rescission of the loan under TILA.  After several years of litigation, including an appeal to this court, U.S. Bank moved to dismiss Mr. Shaw's claim for lack of jurisdiction, arguing he failed to exhaust administrative remedies through the FDIC as required by FIRREA.  Mr. Shaw responded that FIRREA did not apply and further discovery was needed to make that showing.  The district court rejected these arguments, granted U.S. Bank's motion, and entered judgment.  This appeal followed.

While this appeal was pending, Mr. Shaw sent the FDIC a letter explaining the alleged TILA violations and requesting assistance in rescinding the loan.  Mr. Shaw told the FDIC that his loan was owned by "either LaSalle Bank, Bank of America, or both."[1]  The FDIC responded a week later, explaining it was "unable to process" his request because "[t]he financial institution referenced in your request, LaSalle Bank, is not a FDIC Receivership."

## II

"We review de novo the district court's dismissal for lack of jurisdiction."  *Rundgren v. Wash. Mut. Bank, FA*,

---

[1] It is not clear that LaSalle Bank is or ever was the trustee of Mr. Shaw's loan.  Nor did Mr. Shaw include any allegations about LaSalle Bank in his Complaint or declaration opposing U.S. Bank's motion to dismiss.  Nevertheless, because it does not affect the outcome, we assume that LaSalle Bank was the trustee of Mr. Shaw's loan at some point.

760 F.3d 1056, 1060 (9th Cir. 2014) (dismissal for failure to exhaust under FIRREA). A district court's discovery order is reviewed for abuse of discretion. *United States v. Bourgeois*, 964 F.2d 935, 937 (9th Cir. 1992).

## III

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183, was enacted "in an effort to prevent the collapse of the [savings and loan] industry in the late 1980s." *Rundgren*, 760 F.3d at 1060 (internal quotation marks omitted). "[T]o enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions," FIRREA granted "the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New Eng.*, 986 F.2d 319, 320 (9th Cir. 1993).

To that end, FIRREA "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate." *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012). "The comprehensive claims process allows the FDIC to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks without unduly burdening the District Courts." *Rundgren*, 760 F.3d at 1060 (internal citations omitted).

As part of this process, the FDIC must "publish a notice to the depository institution's creditors" with instructions "to present their claims, together with proof, to the receiver," by a specific date. 12 U.S.C. § 1821(d)(3)(B)(i). Once a claim is filed, the FDIC is given authority to "determine" claims. *Id.* § 1821(d)(3). This authority includes, inter alia,

"allow[ing]" claims, "disallow[ing]" claims, and "pay[ing]" creditor claims." *Id.* § 1821(d)(5)(A)(i), (10)(a). If the FDIC disallows a claim, "the claimant may request administrative review of the claim . . . or file suit on such claim" in the district court whose jurisdiction covers the depository institution. *Id.* § 1821(d)(6)(A)(ii).

If a claim has not been exhausted through this process, FIRREA strips courts of jurisdiction over:

> (i)    any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

> (ii)   any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The Ninth Circuit has interpreted this provision to be a jurisdictional exhaustion requirement. *E.g.*, *Benson*, 673 F.3d at 1211–12.

For FIRREA's jurisdictional bar in clause (ii) of 12 U.S.C. § 1821(d)(13)(D) to apply, three elements must be met. There must be (1) a "claim" that (2) relates to "any act or omission" of (3) "an institution for which the [FDIC] has been appointed receiver." *Rundgren*, 760 F.3d at 1061. Here, these elements are met. FIRREA's exhaustion requirement therefore applies.

**A**

A "claim" under FIRREA is "a cause of action . . . that gives rise to a right to payment or an equitable remedy." *Id.* Mr. Shaw has a "claim" because his cause of action gives right to an equitable remedy—rescission.

Mr. Shaw disagrees. He argues that he does not have a "claim" under FIRREA because his demand for rescission of his loan under TILA is "not susceptible of resolution through the claims procedure." He relies on language used in some of our cases to this effect. *E.g.*, *Henderson*, 986 F.2d at 321 ("The statute bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is susceptible of resolution through the claims procedure.") (internal quotation marks omitted); *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1150 (9th Cir. 1994) (same). A survey of some of the cases applying this language is instructive.

The Third Circuit was the first court to use the term "susceptible of resolution through the claims procedure" to interpret the word "claim" in FIRREA. *Rosa v. Resolution Tr. Corp.*, 938 F.2d 383, 394 (3d Cir. 1991). There, the administrator of a retirement savings plan failed, and the Resolution Trust Corporation ("RTC") was appointed as the receiver. *Id.* at 388–89. Later, when the RTC terminated the plan, the plan participants did not bring a claim under FIRREA's administrative process. *Id.* at 389–90. Instead, they sued the RTC and related entities, seeking, among other things, an order preventing the RTC from terminating the plan. *Id.* at 394–95. In deciding whether this type of request for relief was a "claim" under FIRREA, the Third Circuit analyzed FIRREA's claims procedure. *Id.* Because there was no indication that this claims procedure contemplated the RTC determining a claim involving the termination of a retirement savings plan, the participants' claim was "not

susceptible of resolution through the claims procedure" and exhaustion was not required. *Id.*

A few years later, we applied the rationale behind this rule for the first time in *In re Parker*, 24 F.3d at 1152. In that case, a debtor filed a preference action in bankruptcy court seeking recovery of money owed it by a failed bank for which a receiver had been appointed. *Id.* at 1148–49. He did not file a "claim" via FIRREA's claims process before doing so. *Id.* We recognized that the preference action would seem to be a "claim" under the plain language of FIRREA, thereby requiring exhaustion. *See id.* at 1152–53. But because the broader statutory scheme of FIRREA made clear that the statute does not apply to claims of debtors in bankruptcy proceedings, we held that the debtor's "claim" was not "susceptible of resolution through FIRREA claims procedures," meaning exhaustion was not required. *Id.*

We used this same framework in *McCarthy v. FDIC*, 348 F.3d 1075 (9th Cir. 2003). There, a homeowner sought damages against the FDIC for its conduct after it was appointed as receiver for a failed bank. *Id.* at 1077. In opposing dismissal, the homeowner argued that his claim was not "susceptible of resolution through the administrative claims procedure because [it] arose after the FDIC was appointed receiver." *Id.* at 1080–81. But we rejected this argument, holding that nothing in FIRREA's claims procedure suggested the homeowner could not first exhaust his claim with the FDIC. *Id.*

These cases recognize the established proposition that "statutory language must be construed as a whole." *Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 470 (9th Cir. 2001). Where the larger statutory scheme establishes that a claim is not "susceptible of resolution through FIRREA claims procedures," it is not a "claim" under FIRREA. *In re*

*Parker*, 24 F.3d at 1152.  However, where the statute does not so indicate, FIRREA applies and exhaustion is required. *McCarthy*, 348 F.3d at 1080–81; *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010) (holding that 12 U.S.C. § 1821(d)(13)(D)(ii) "bars only claims that could be brought under [FIRREA's] administrative procedures").

Mr. Shaw advances a handful of arguments why his TILA claim is "not susceptible of resolution" through FIRREA's claims procedures.  But none of his arguments rely on FIRREA's claims procedures or its general statutory scheme.  To the contrary, his arguments are inconsistent with FIRREA's plain text.

Mr. Shaw first argues that his claim is not susceptible of resolution via FIRREA's claims process because TILA claims are against the current holder of the loan—not the originating bank.  But nothing in FIRREA supports this argument.  FIRREA "does not make any distinction based on the identity of the party from whom relief is sought." *Benson*, 673 F.3d at 1212.  Instead, it "distinguishes claims on their factual bases."  *Id.*  Mr. Shaw's contrary interpretation would "permit[] claimants to avoid the provisions [of FIRREA] by bringing claims against the assuming bank" and "would encourage the very litigation that FIRREA aimed to avoid."  *Id.* at 1214 (quoting *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008)).

Mr. Shaw also argues that his claim is not susceptible of resolution via FIRREA because his loan was sold to a different bank before WaMu was placed into receivership. In other words, because Mr. Shaw's loan was never in the possession of the FDIC, FIRREA should not apply.  But FIRREA's claims process, 12 U.S.C. § 1821(d)(3)–(10),

never requires the FDIC to have possessed the loan before "determin[ing]" a claim. *Id.* § 1821(d)(3). And the exhaustion provision broadly applies to "any claim relating to any act or omission of [an institution for which the FDIC has been appointed receiver]," focusing on the factual basis for the claim, not where the assets are located. *Id.* § 1821(d)(13)(D)(ii).

The Fourth Circuit reached the same conclusion in *Willner v. Dimon*, 849 F.3d 93 (4th Cir. 2017). In that case, homeowners argued that "FIRREA's exhaustion requirement [did not] apply" because their home loan was securitized prior to the failure of the bank such that the loan never passed through the receivership estate. *Id.* at 105. But the Fourth Circuit rejected that argument as "irrelevant" because of the broad exhaustion requirement in FIRREA. *Id.* (citing 12 U.S.C. § 1821(d)(13)(D)(ii)).

We agree with the Fourth Circuit. Even where an asset never passes through the FDIC's receivership estate, the FDIC should assess the claim first. It may be that the FDIC can provide relief. In this case, for example, the FDIC retained liability—including liability for "equitable" relief—for "Borrower Claims" based on WaMu's "lending or loan purchase activities" under the Purchase and Assumption Agreement with JPMorgan Chase. We do not decide whether or not the FDIC could have provided relief to Mr. Shaw. Regardless, Mr. Shaw was required to ask the FDIC to "determine" his claim before filing suit.

Finally, Mr. Shaw argues that his claim is not susceptible of resolution because he did not become aware of his claim until months after the deadline for filing a claim. But the FDIC still could have permitted his claim at that time. Indeed, FIRREA contains a provision allowing the FDIC to consider claims filed after the filing period under certain

circumstances.    *See*   12   U.S.C.   § 1821(d)(5)(C)(ii).
According to the FDIC, that provision "permits late filing by
those whose claims do not arise until after the deadline has
passed." *McCarthy*, 348 F.3d at 1080–81.  And even had the
FDIC not allowed Mr. Shaw's claim, he would still have the
right to seek review of that decision before a district court.
12 U.S.C. § 1821(d)(6)(A).

In short, because the FDIC can "determine," "allow," or
"disallow," 12 U.S.C. § 1821(d)(3), (d)(5), Mr. Shaw's
TILA claim, he has a "claim" under FIRREA.[2]  This holding
may seem unfair given Mr. Shaw's uncertainty about
whether the FDIC can help him rescind his loan.  But it
makes sense, under FIRREA, for Mr. Shaw to ask the FDIC
for relief first.  True, had Mr. Shaw filed a claim, the FDIC
may have disallowed it.  Still, uncertainty about how, or
whether, the FDIC would resolve a claim does not mean
there is no "claim" under FIRREA.

## B

Mr. Shaw's "claim" also relates to an "act or
omission"—that is, WaMu's supposed failure to comply
with TILA's disclosure requirements, including providing
defective notice of the right to rescind.

Mr. Shaw argues that this element is not met because he
has alleged "[c]laims of independent misconduct" by
subsequent holders of the loan for failing to respond to his

---

[2] Given this conclusion, we reject Mr. Shaw's argument that his
communications with the FDIC—raised for the first time on appeal—
support his claim not being "susceptible of resolution" via FIRREA's
claims process.  Even construing the FDIC's letter in Mr. Shaw's favor,
it is not clear that the FDIC was doing anything other than
"disallow[ing]" his claim.  12 U.S.C. § 1821(d)(5)(A)(i).

rescission letter. Mr. Shaw is incorrect. His claim for rescission depends entirely on alleged misconduct by WaMu. Any notice of rescission a later loan holder did not respond to would only be actionable if WaMu failed to comply with TILA's disclosure requirement at loan closing. Mr. Shaw's claim is "*functionally*, albeit not *formally* against [the] failed bank." *Benson*, 673 F.3d at 1215 (internal quotation marks omitted). FIRREA therefore applies. *Id.*[3]

## C

Mr. Shaw further argues that even if all three elements of FIRREA are met, dismissal was still erroneous because filing a claim with the FDIC would have been futile. But FIRREA does not contain a futility exception. 12 U.S.C. § 1821(d)(13)(D). And the Supreme Court has made clear that if exhaustion "is a statutorily specified prerequisite"— as opposed to a judicially created one—"[t]he requirement is . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility[.]" *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). We therefore decline to create a futility exception to this statutory exhaustion requirement under these circumstances. *See Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998) ("[W]hile judicially-created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements

---

[3] Mr. Shaw does not separately contest the third element—that his "claim" is based on conduct by an "institution for which the [FDIC] has been appointed receiver." Because WaMu failed and the FDIC was subsequently appointed as receiver, this element is met.

deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court.").

## IV

Having determined that FIRREA applies, we must decide whether Mr. Shaw has exhausted his remedies with the FDIC. We conclude he has not. Mr. Shaw's Complaint includes no allegations that he presented his TILA claim to the FDIC before filing suit.

On appeal, Mr. Shaw asks us to take judicial notice of his communications with the FDIC after the district court's dismissal, which arguably establish exhaustion. Although we grant that request, "[s]ubject matter jurisdiction must exist as of the time the action is commenced," *Mamigonian v. Biggs*, 710 F.3d 936, 942 (9th Cir. 2013), especially in the context of administrative exhaustion. *See Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999). Indeed, administrative exhaustion is often called a "jurisdictional *prerequisite*." *Weinberger*, 422 U.S. at 766 (emphasis added). Because subject matter jurisdiction was lacking when this action was filed, Mr. Shaw's later communications with the FDIC do not prevent dismissal of his TILA claim.

## V

Finally, we turn to Mr. Shaw's request for further discovery. The Federal Rules of Civil Procedure allow parties to obtain discovery on any matter "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, Mr. Shaw requested discovery to determine: (1) "whether Plaintiff's loan was sold prior to the date the FDIC placed [WaMu] in receivership"; (2) "whether exhaustion of remedies would have been futile"; and (3) "whether exhaustion of FIRREA actually occurred." The district court

held that the first request was "not relevant to forming an opposition to the motion to dismiss" and that Mr. Shaw did not make a "a sufficient showing in support" of requests two and three.

These rulings were not an abuse of discretion. Requests one and two sought irrelevant information because the date the loan was sold and futility have no bearing on the FIRREA inquiry, for the reasons discussed above. And discovery as to "whether exhaustion of FIRREA actually occurred" was unnecessary because it was within Mr. Shaw's personal knowledge. As the district court recognized, Mr. Shaw "has not alleged, nor can he— consistent with his Rule 11 obligations—that he filed a claim with the FDIC and exhausted his administrative remedies."

**AFFIRMED.**